UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TRENT YOUNG,

          Plaintiff,

v.

KENT COUNTY SHERIFF'S
DEPARTMENT et al.,

          Defendants.
_____/

Case No. 1:19-cv-854

Honorable Janet T. Neff

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Rule 21 of the Federal Rules of Civil Procedure, a federal court, acting *sua sponte*, may at any time consider whether parties are properly joined in an action. "Misjoinder . . . is not a ground for dismissing an action." Fed. R. Civ. P. 21. But, the Court, "on just terms" may drop a party or "sever any claim against a party." *Id.*

      Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

      Applying Rule 21, the Court will dismiss Plaintiff's complaint against Defendants Kent County Sheriff's Department, Corizon Health, Bylsma, Barnhardt, Klein, Baarda, Couch,

McGinnis, Kalman, Thorne, Steele, LaJoye-Young, Johnson, Carrel, Flentje, Unknown Party #1, Unknown Party #2, Unknown Party #4, Unknown Party #5, Unknown Party #6, Unknown Party #7, Unknown Party #8, because they are improperly joined defendants.

Applying the PLRA, Plaintiff's Fourteenth Amendment claim of excessive force against Defendants Jordan and Clark, and of deliberate indifference against Defendants Jordan and Unknown Party #3, may proceed.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Kent County Jail in Kent County, Michigan. Plaintiff sues the Kent County Sheriff's Department; Corizon Health, Inc.; Deputies Unknown Jordan,[1] Unknown Clark, Unknown Bylsma, Unknown Barnhardt, Unknown Klein, Unknown Baarda, and Unknown Couch; Sergeant Unknown McGinnis; Lieutenant Unknown Kalman, Captain Unknown Thorne; Head of Programs Rob Steele; Undersheriff Unknown Party #1; Sheriff Michelle LaJoye-Young; Nurses Unknown Party #2, Unknown Party #3, Unknown Party #4, Unknown Party #5, Unknown Party #6, Unknown Party #7, and Unknown Party #8; Head Nurse Penny Johnson; and Doctors Unknown Carrel and Unknown Flentje.

Plaintiff's 33-paragraph statement of his claim describes multiple events over the span of approximately one month from late February 2019 to late March 2019. Although the

---

[1] Plaintiff occasionally spells the name "Jordan" in his Complaint as "Jourden." (*See, e.g.*, Compl., ECF No. 1, PageID.8.)

2

Complaint does not specify, the events presumably occurred while Plaintiff was awaiting trial.[2] Plaintiff alleges that on the evening of February 22, 2019, before 7 p.m., he met Nurse Unknown Party #2 in the med-line to receive eye drops and skin cream. (Compl., ECF No. 1, PageID.8.) Nurse Unknown Party #2 did not have eye drops available, but she did have skin cream and asked Plaintiff if he had his cup, apparently so Plaintiff could receive an allotment. Plaintiff left for an unspecified amount of time to check if he had his cup. Before Plaintiff returned, the nurse and Deputy Jordan had begun moving on without giving Plaintiff skin cream. When Plaintiff inquired why the nurse was leaving, Deputy Jordan responded "You are done! You just want to run around the dayroom." (*Id.*) Plaintiff responded, explaining that he needed the skin cream because his dry skin had begun cracking and bleeding. Plaintiff alleges that Deputy Jordan dismissed the inquiry before spraying Plaintiff with pepper spray twice, the second time while Plaintiff "walked off." (*Id.*) Afterward, as Plaintiff walked toward his cell wiping the pepper spray from his face, Deputy Clark used his Taser on Plaintiff. While being tased, Plaintiff fell and sustained an open wound to his chin. Plaintiff was then taken to segregation. The complaint is unclear whether Plaintiff was returned to segregation or whether he was taken to segregation as a result of the events that evening. (*See id.*, PageID.9 ¶ 6.)

The remainder of Plaintiff's Complaint alleges misconduct related to: follow-up medical care (*see, e.g.*, Compl., ECF No. 1, PageID.9 ¶ 10); unrelated medical care (*see, e.g.*, *id.*, PageID.10 ¶ 11); Plaintiff's filing of grievances (*see, e.g.*, *id.*, PageID.10 ¶ 15 to PageID.12 ¶ 22); his release and return to segregation (*see, e.g.*, *id.*, PageID.12 ¶¶ 23-25); and his lack of access to the law library and its resources (*see, e.g.*, *id.*, PageID.12 ¶ 26).

---

[2] Plaintiff was sentenced on July 11, 2019, almost five months after the earliest allegations in his Complaint. *See* MDOC, Offender Tracking Information System (OTIS) – Offender Profile, https://mdocweb.state mi.us/otis2/otis2profile.aspx?mdocNumber=583032 (last visited Dec. 9, 2019).

Plaintiff seeks damages in excess of $1 million and injunctive relief.

## II. Misjoinder

Plaintiff has joined 25 Defendants in this action connecting a series of discrete events during a span of approximately one month in February and March 2019.

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder of parties and/or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004) (discussing purpose of PLRA). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with these improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Defendants Jordan and Clark are the first two defendants listed in Plaintiff's Complaint. (Compl., ECF No. 1, PageID.2.) They, along with Nurse Unknown Party #3, are the only Defendants identified during the initial confrontation described in the first six paragraphs of the Complaint. Plaintiff makes no allegations against any other Defendant directly related to the confrontation described at the beginning of this action beyond his patently hollow assertion that the remaining Defendants "retaliat[ed] against the Plaintiff for writing his grievance for deputy Jordan and deputy Clark." (Compl., ECF No. 1, PageID.14.) However, Plaintiff offers no factual allegations to support his conclusory allegations of retaliation. Such unsupported allegations of retaliation would fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. So, too, they fail to link the otherwise unrelated claim to Plaintiff's properly joined claims against Defendants Jordan, Clark, and Unknown Party #3. *See Moore v. Mich. Dep't of Corr. et al.*, No. 1:17-cv-615 (W.D. Mich. Aug. 10, 2017), *aff'd*, No. 17-6107 (6th Cir. Sept. 5, 2018).

As a result, no claim against any of the other 22 Defendants is transactionally related to his claims against Defendants Jordan, Clark, and Unknown Party #3.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ.*

7

*of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the actions about which Plaintiff complains occurred in early 2019, well within the three-year period of limitations. Those claims are not at risk of being time-barred.

Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and dismiss all Defendants other than Defendants Jordan, Clark, and Unknown Party #3 from the action, without prejudice to the institution of new, separate lawsuits by Plaintiff against those Defendants.[3] *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

---

[3] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another. Not all of the dismissed claims and Defendants would be properly brought in a single new action.

U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As a pretrial detainee, Plaintiff alleges claims arising under the Fourteenth Amendment.

### IV. Fourteenth Amendment

Plaintiff alleges Fourteenth Amendment claims against Defendants Jordan and Unknown Party #3 for deliberate indifference to a serious medical need, and against Defendants Jordan and Clark and for excessive force.

#### A. Excessive Force

Plaintiff alleges that Defendants Jordan and Clark used excessive force by spraying him with pepper spray and using a Taser on him.

In *Kingsley v. Hendrickson*, 576 U.S. ___, 135 S. Ct. 2466 (2015), the Supreme Court held that the use of excessive force on pretrial detainees is measured under the Due Process

Clause of the Fourteenth Amendment rather than the Eighth Amendment, which applies to convicted prisoners. The Court held that the subjective prong of the Eighth Amendment deliberate indifference standard did not apply to the pretrial detainees in excessive force cases, instead, the relevant inquiry is whether the force purposely or knowingly used against the prisoner was objectively unreasonable. *Id.* at 2473-74; *see also Coley v. Lucas Cty.*, 799 F.3d 530, 538 (6th Cir. 2015) (citing *Kingsley*).

This inquiry is "highly fact-dependent, and must take into account the 'perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Coley*, 799 F.3d at 538 (quoting *Kingsley*, 135 S. Ct. at 2473). The inquiry must consider the government's "legitimate interests" managing correctional facilities in pursuing "to preserve internal order and discipline and to maintain institutional security." *Coley*, 799 F.3d at 538 (internal quotations omitted). The *Kingsley* Court provided further guideposts for the inquiry:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

*Kingsley*, 135 S. Ct. at 2473 (internal citations omitted). Both *Kingsley* and *Coley* noted that "pretrial detainees cannot be subjected to 'the use of excessive force that amounts to punishment,' precisely because they 'cannot be punished at all.'" *Coley*, 799 F.3d at 538 (quoting *Kingsley*, 135 S. Ct. at 2475).

Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state a Fourteenth Amendment claim against Defendants Jordan and Clark for excessive force.

11

### B. Deliberate Indifference to Medical Needs

Plaintiff alleges that Defendants Jordan and Unknown Party #3 were deliberately indifferent to his medical needs when they left Plaintiff without providing skin cream or eye drops.

In *Richmond v. Huq et al.*, 885 F.3d 928 (6th Cir. 2018), the Sixth Circuit declined to decide whether, in the context of a failure to provide medical care, *Kingsley* eliminated the requirement of proving the subjective prong of the deliberate indifference test for pretrial detainees under the Fourteenth Amendment. *Id.* at 938 n.3. As a consequence, the two-pronged deliberate-indifference standard found under the Eighth Amendment continues to apply to medical claims by pretrial detainees.

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff's allegation that a single failure to provide eye drops amounts to a violation of constitutional magnitude falls flat, but the failure to provide skin cream is a closer question. Plaintiff does not assert or imply any injury or harm that he risked suffering without the eye drops, or that the failure to provide the drops happened more than the single occasion. Indeed, the Complaint suggests that absence of eye drops on the evening of February 22, 2019, was of little consequence to Plaintiff.

In contrast, Plaintiff alleged that he needed skin cream for his dry skin to prevent it from cracking and bleeding. In fact, Plaintiff's alleges that his explanations that he needed the skin cream because his skin was so dry it was cracked and bleeding triggered Defendant Jordan to use pepper spray. Moreover, although there is a noticeable absence of any medical prescription for the skin cream in the Complaint, Defendant Unknown Party #3 had apparently intended to provide Plaintiff with skin cream when she asked for his cup.

Dry skin experienced by the general population is typically not a sufficiently serious medical condition to state a deliberate indifference claim. *See, e.g.*, *Wells v. Grahn*, No. 1:13-cv-608, 2014 WL 2616643, at *2 (W.D. Mich. June 12, 2014) ("There was nothing unusual or pathological about plaintiff's dry skin. It was similar to the dry skin experienced by the general population, which is readily treated with over-the-counter products."). However, the Third Circuit has contrasted "mere 'dry skin'" with more severe cases where an inmate's skin is "so cracked and dry from his condition that it bled." *McKeithan v. Beard*, 322 F. App'x 194, 198 (3d Cir. 2009). In these more severe cases, the Third Circuit has indicated that a Plaintiff "might . . . successfully allege[] a serious medical condition." *Id.*

Thus, upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state a Fourteenth Amendment claim against Defendants Jordan and Unknown Party #3 for deliberate indifference to his serious medical needs.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kent County Sheriff's Department, Corizon Health, Bylsma, Barnhardt, Klein, Baarda, Couch, McGinnis, Kalman, Thorne, Steele, LaJoye-Young, Johnson, Carrel, Flentje, Unknown Party #1, Unknown Party #2, Unknown Party #4, Unknown Party #5, Unknown Party #6, Unknown Party #7, and Unknown Party #8 will be dropped from the case under Rule 21 of the Federal Rules of Civil Procedure.

Plaintiff's excessive force claims against Defendants Jordan and Clark, and deliberate indifference claims against Defendants Jordan and Unknown Party #3 remain in the case.

An order consistent with this opinion will be entered.

Dated: December 17, 2019   /s/ Janet T. Neff
Janet T. Neff
United States District Judge